DECISION AND JUDGMENT ENTRY
This case is before the court on appeal from a judgment of the Lucas County Court of Common Pleas, following a jury trial, which found appellant, Scott Smithers, guilty of one count of attempted rape of a minor, in violation of R.C. 2923.02 and R.C.2907.02(A)(1)(B). Appellant raises the following assignments of error:
 "I. THE JURY VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
"TR. 438, 439; TR. 240-242
 "II. APPELLANT'S RIGHTS TO DUE PROCESS AND EQUAL PROTECTION OF THE LAWS WAS VIOLATED WHEN THE TRIAL JUDGE DENIED APPELLANT'S RULE 29 MOTION.
 "III. APPELLANT'S RIGHTS TO EQUAL PROTECTION AND DUE PROCESS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I § 2 AND 16 OF THE OHIO CONSTITUTION WERE VIOLATED.
 "IV. OHIO REVISED CODE 2950 VIOLATES SECTION 1, ARTICLE I OF THE OHIO CONSTITUTION."
The facts of this case are as follows. On March 29, 1997, Crystal, the complainant, was hired to babysit overnight for Lisa Ball's three children: Jason, eleven; Nicole, nine; and Tiffany, four. On that date, Crystal was twelve years old. Two of Crystal's friends, Angela[1] and Crystal B., came over to keep her company. Prior to Lisa Ball leaving the house, the girls snuck three minor boys, David, Zeke, and Tre, in and hid them upstairs while Ms. Ball got ready for work. Once Ms. Ball left, one of the boys telephoned appellant, then twenty-three, and asked him to come to the house.
The evidence is conflicting as to what occurred once appellant arrived at the Ball home. At trial, Eric Herzog and Sam Walling, friends of appellant testified that they waited in the car while appellant ran into the home and came back out approximately five minutes later. They testified that they then dropped him off at home.
Angela, Crystal, David and Zeke testified that appellant and Zeke drove to a carry out and purchased a large quantity of beer. All of the children, with the possible exception of the Ball children, became highly intoxicated.
Recounting the incident that is the subject of the instant appeal, Crystal testified that appellant tried to have sex with her. She stated that:
"A: [He] [f]orced himself on me.
"Q: How did he do that?
 "A: I was sitting on a bed and he told me that he would have sex with me and he started touching my boobs and other parts of my body and then he started taking his pants off and pushed me down on the bed and then I started screaming and I told him no at least three times and then David and Zeke came upstairs.
 "Q: You said he touched other parts of your body other than your breasts. What parts of your body did he touch?
"A: My upper and lower part of my body.
"Q: Did he tough your vagina?
"A: Yes.
"Q: With his hands or any other part of his body?
"A: His hands.
 "Q: Were you alone in the room with him when this happened? * * *.
"A: Yes.
"Q: You said you screamed?
"A: Yes.
"Q: You asked for help? What happened?
"A: David and Zeke came upstairs.
"Q: What did they do?
"A: Got him off of me.
"Q: Were they able to get him off of you?
"A: Yes.
 "Q: What did you do after they were able to pull him off of you?
"A: I went downstairs.
"Q: Did you get dressed?
"A: I was dressed.
"Q: What were you wearing?
"A: I was wearing my jeans and my bra."
David, on the other hand, denied that he had to pull appellant off of Crystal but that appellant did have sex with her. Zeke acknowledged that he told appellant to "back off" and leave Crystal alone. Zeke then stated, upon review of his testimony from a related juvenile proceeding, that he actually grabbed appellant. Finally, Jason, one of the Ball children, testified that he heard someone scream and went upstairs and saw David and Zeke pulling appellant off of Crystal.
The jury found appellant guilty of the attempted rape of Crystal. At sentencing, appellant was classified as a sexual oriented offender pursuant to R.C. 2950.01 and was sentenced to a four year term of imprisonment. It is from this sentence and verdict that appellant now appeals.
In his first assignment of error, appellant argues that the jury's verdict is against the manifest weight of the evidence. While appellant characterizes the assignment of error as against the manifest weight of the evidence, we note that when the court must determine whether the evidence is legally sufficient to support all the elements of the offense, the question is one of sufficiency of evidence. State v. Thompkins (1997),78 Ohio St.3d 380, 386-387.
The Ohio Supreme Court has set forth this court's standard of review as to the sufficiency of evidence:
 "An appellate court's function * * * is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Citation omitted.) State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
Appellant was convicted of attempted rape. R.C. 2907.02
defines rape, in relevant part, as follows:
 "(A) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
"* * *.
 "(b) The other person is less then thirteen years of age, whether or not the offender knows the age of the other person."
"Sexual conduct" is defined as, inter alia, "vaginal intercourse between a male and a female * * *. Penetration, however slight, is sufficient to complete vaginal * * * intercourse." R.C. 2907.01
(A). Attempted rape is defined as conduct that, if successful, would result in the commission of rape. R.C. 2923.02(A).
Thus, in proving attempted rape, the state must prove that appellant intended to engage in sexual conduct with a person less than thirteen years of age and that appellant committed an act that "convincingly demonstrates" such intent. State v. Woods
(1976), 48 Ohio St.2d 127, 132, overruled in part by State v.Downs (1977), 51 Ohio St.2d 47. The Woods court clarified that the conduct complained of need not be the last proximate act prior to the commission of the felony. Id. at 131, quoting State v.Farmer (1951), 156 Ohio St. 214, 216. Rather, the actor need only take a "substantial step," or act strongly corroborative of the actor's criminal purpose. Id. at 132.
Here, Crystal testified that appellant stated he was going to have sex with her, fondled her breasts and vagina, began taking his pants off and pushed her down on the bed despite her repeated requests for him to stop. By stating he was going to have sex with her and by beginning to remove his pants and pushing Crystal down on the bed, the jury could have reasonably found that appellant made a "substantial step" towards the commission of the crime. Accordingly, there was sufficient evidence presented which, if believed, would lead a rational trier of fact to find the elements of the attempted rape beyond a reasonable doubt.
Further, when we consider the evidence under the manifest weight standard, we cannot say that the jury lost its way and created a manifest miscarriage of justice when it found appellant guilty of attempted rape. See Thompkins, supra, quotingState v. Martin (1983), 20 Ohio App.3d 172, 175. Accordingly, appellant's first assignment of error is not well-taken.
Appellant, in his second assignment of error, challenges the trial court's denial of his Crim.R. 29 motion for acquittal. Appellant contends that, because the state failed to prove beyond a reasonable doubt that appellant attempted to commit rape, the trial court violated his constitutional rights and the charge of attempted rape should have never been submitted to the jury.
It is axiomatic that "`a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt.'"State v. Apanovitch (1987), 33 Ohio St.3d 19, 23, quoting Statev. Bridgeman (1978), 55 Ohio St.2d 261, syllabus. The reviewing court shall consider the evidence in a light most favorable to the appellee. Jackson v. Virginia (1979), 443 U.S. 307.
As we concluded in our disposition of appellant's first assignment of error, we find that based upon the testimony of Crystal, Zeke and Jason, reasonable minds could reach different conclusions as to whether the state had proved beyond a reasonable doubt that appellant had committed the crime of attempted rape. Accordingly, we find that the trial court did not err by denying appellant's motion for acquittal and appellant's second assignment of error is not well-taken.
Appellant next argues, in his third assignment of error, that the trial court's classification of appellant as a sexually oriented offender violates his due process and equal protection rights. Specifically, that the trial court's finding that appellant was not a sexual predator warrants that the evidence was insufficient to show a likelihood of recidivism. Appellant relies on State v. Boeddeker (Feb. 13, 1998), Hamilton App. No. C-970471, unreported, which held that the registration requirements of R.C. 2950.04 through 2950.02 are unconstitutional as applied to sexually oriented offenders. Id. at 5. TheBoeddeker court reasoned that the registration requirement for the sexually oriented offender bears no rational relation to the state's goals because the offender is considered not likely to offend in the future. Id. In State v. Redden (Mar. 19, 1999), Lucas App. No. L-98-1087, unreported, this court addressed these arguments and found them unpersuasive. See State v. Fleck (Sept. 3, 1999), Lucas App. No. L-98-129, unreported. Accordingly, appellant's third assignment of error is not well-taken.
In his fourth and final assignment of error appellant argues that R.C. Chapter 2950 violates Section 1, Article I of the Ohio Constitution.[2] In support of his argument, appellant relies on the Eleventh Appellate District's decision in State v.Williams (Feb. 2, 1999), Lake App. No. 97-L-191.
On April 28, 2000, the Supreme Court of Ohio held that R.C. Chapter 2950 does not violate the rights set forth in Section1, Article I of the Ohio Constitution. State v. Williams, 2000 Ohio LEXIS 813. The court specifically found that Section 1, Article I is not self-executing; in other words, the provision is not one which is complete in itself and operates without the aid of supplemental or enabling legislation. Id. at 22. The court further found that even assuming the provision were self-executing, the legislature, by enacting R.C. Chapter 2950, did not violate its declaration. Id. at 29-37. Accordingly, appellant's fourth assignment of error is not well-taken.
On consideration whereof, we find that substantial justice has been done the party complaining, and the judgment of the Lucas County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellant.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 _______________________________ MARK L. PIETRYKOWSKI, J.
MELVIN L. RESNICK, J., JAMES R. SHERCK, J., CONCUR.
[1] Appellant was also charged with the rape of Angela. Appellant was found not guilty as to this charge.
[2] Section 1, Article I of the Ohio Constitution provides that "[a]ll men are, by nature, free and independent, and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing, and protecting property, and seeking and obtaining happiness and safety."